UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KAHLIL HILL,

                Plaintiff,

                -against-

THE CITY OF NEW YORK, *et al.*,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-00911 (OEM) (CHK)

ORELIA E. MERCHANT, United States District Judge:

On January 15, 2025, *pro se* plaintiff Kahlil Hill ("Plaintiff") commenced this civil action in the U.S. District Court for the Southern District of New York under 42 U.S.C. § 1983 ("§ 1983") against defendants the City of New York ("City")[1], Soomdat Chanderdat, in his official capacity as a New York Human Resources Administration ("HRA") police officer ("HRA Officer Chanderdat"), Jennifer Sellers, in her official capacity as an HRA police officer ("HRA Officer Sellers"), Fiona Roberts, in her official capacity as an HRA police officer ("HRA Officer Roberts"), and Lisa Looby, in her official capacity as HRA Captain ("Captain Looby") (collectively, "Defendants"). *See generally* Complaint for Violation of Civil Rights, Dkt. 1 ("Complaint" or "Compl."); Compl., 1983 Civil Suit Defendants, Dkt. 1-1 ("Compl. Ex. 1"); Compl., Statement of Claim, Dkt. 1-2 ("Compl. Ex. 2"); Compl., Claim Details, Dkt. 1-3 ("Compl. Ex. 3"); Compl., Plaintiff Request for Relief, Dkt. 1-4 ("Compl. Ex. 4").[2] In the Complaint, Plaintiff alleges civil rights violations, including excessive force, false imprisonment, illegal

---

[1] Plaintiff sued the New York City Human Resources Administration Department of Social Services ("HRA"). *See generally* Compl. On April 7, 2025, the Court sua sponte substituted the City of New York as a proper defendant in place of the HRA. *See* Memorandum and Order, Dkt.8.

[2] When referencing the Complaint and its attached exhibits, the Court refers to the page numbers contained in the automatically generated ECF headers.

search and seizure, and retaliation for exercising her First Amendment rights, arising from Defendants' response to an incident between Plaintiff and an HRA employee in an HRA building on December 6, 2024. *See* Compl. Ex. 2 at 1-3. On February 18, 2025, this action was transferred to this Court. *See* Transfer Order, Dkt. 5. Before the Court is Defendants' fully briefed motion to dismiss Plaintiff's Complaint for failure to state claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[3]

For the following reasons Defendants' motion is granted.

### BACKGROUND[4]

On December 6, 2024, Plaintiff entered the HRA building in Queens, New York, seeking to address her concerns regarding a benefits letter she had received. Compl. Ex. 3 at 1. After receiving a ticket, Plaintiff waited over an hour until her ticket was called by an HRA employee. *Id.* Once called, Plaintiff got into a disagreement with the HRA employee in the public waiting area about whether the HRA employee could assist her. *Id.* The HRA employee walked away from Plaintiff and later reappeared in the public waiting area of the building where she originally spoke to Plaintiff. *Id.* at 2. Plaintiff then "pulled [out] her cellphone camera and began to record her interactions." *Id.* When Plaintiff moved her camera "to record a better view" of the HRA employee, HRA Officer Chanderdat stood in front of Plaintiff and instructed her to stop recording

---

[3] *See* Notice of Motion, Dkt. 25 ("Motion"); Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Dkt. 28 ("Defs.' Memorandum" or "Defs.' Mem."); Declaration of Edward Reilingh ("Reilingh Decl."), Exhibit A, Dkt. 27-1 ("Sellers Video"); Reilingh Decl., Exhibit B, Dkt. 27-2 ("Chanderdat Video 1"); Reilingh Decl., Exhibit C, Dkt. 27-3 ("Roberts Video"); Reilingh Decl., Exhibit D, Dkt. 27-4 ("Chanderdat Video 2"); Opposition to Defendants Request for Dismissal, Dkt. 29 ("Pl.'s Opposition" or "Pl.'s Opp'n"); Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6), Dkt. 30 ("Defs.' Reply").

[4] The following facts are taken from Plaintiffs' Complaint, which incorporates by reference HRA Officers Chanderdat's, Seller's, and Robert's body-worn camera ("BWC") footage, and are accepted as true for the purposes of Defendants' motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court recites only those facts relevant to resolving the pending Motion.

because it was against the HRA's building policy. *Id.* Plaintiff responded that "the law is that [she] can record anywhere [she] want[s] in a public space." Chanderdat Video 1 at 00:29-00:35. At that time, HRA Officers Chanderdat, Sellers, and Roberts surrounded and blocked Plaintiff from entering further into the waiting room. *Id.* at 00:52. Plaintiff began to walk towards the door, *id.* at 00:45-1:08, and the officers motioned and directed Plaintiff to "step out of the building," repeatedly instructing her that she could not record inside the building, *id.* at 00:45-1:40. Plaintiff repeatedly yelled "don't touch me," and requested to see "the poster" that instructed against recording. *Id.* at 01:13-00:20; Compl. Ex. 3 at 2.

As they moved toward the doors, Plaintiff and the HRA officers stopped in front of a column in the waiting area, which had a sign posted on it reading "ELECTRONIC RECORDING OF ANY KIND IN THIS BUILDING IS STRICTLY PROHIBITED. Individuals observed recording in HRA offices will be asked to turn off their devices for the duration of their visit. Anyone refusing to comply will be escorted out of the building by security." Chanderdat Video 1 at 01:13, 01:22.

As the group stood in front of the exit, HRA Officer Chanderdat asked the Plaintiff if she was going to "step out, yes or no." *Id.* at 01:38-01:41. Before Plaintiff responded, HRA Officers Chanderdat Roberts, and Sellers handcuffed Plaintiff's hands behind her back. *Id.* at 01:39-02:15; Compl. Ex. 3 at 2-3. HRA Officer Roberts then took Plaintiff's phone, which she was still holding. Compl. Ex. at 3. Thereafter, HRA Officers Chanderdat, Roberts, and Sellers escorted Plaintiff to an office. Chanderdat Video 1 at 02:27-02:36. They explained to her that she was being detained for trespassing. *Id.*; Compl. Ex. 3 at 3. When Plaintiff sat down in the office, HRA Officer Roberts attempted to retrieve her purse, which Plaintiff also held behind her back, to confirm that there were no sharp objects inside, but Plaintiff refused. Compl. Ex. 3 at 3; Roberts Video at 02:14-

3

02:45.  HRA Officer Roberts was eventually able to retrieve Plaintiff's purse and placed it on a table to search.  Roberts Video at 04:15-05:40.  She removed Plaintiff's identification documents to write down Plaintiff's identifying information and reported that there were no sharp objects.  *Id.*

Plaintiff requested that HRA Officers Chanderdat, Roberts, and Sellers call the New York City Police Department ("NYPD").  Compl. Ex. 3 at 3.  HRA Officers Chanderdat, Roberts, and Sellers then waited with Plaintiff until members of the NYPD arrived.  Roberts Video at 05:40-13:25.  NYPD Captain Looby then entered the room to speak with HRA Officer Sellers, and shortly thereafter Plaintiff's handcuffs were removed, and she was escorted out of the building by NYPD officers.  *Id.* 13:28-13:57; Chanderdat Video 2 at 19:03-19:40; Compl. Ex. 3 at 4.

## LEGAL STANDARD

### A.  Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  *Pro se* plaintiff's pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after

4

*Twombly*," the Court "remain[s] obligated to construe a *pro se* complaint liberally." (citations omitted)).

### B. Documents Considered on a Rule 12(b)(6) Motion

On a Rule 12(b)(6) motion, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference[,]" as well as documents integral' to the complaint. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Thus, even if a document is not attached to the complaint, if the complaint "relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint," the Court may consider it. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

"Courts specifically may consider video footage at the motion to dismiss stage when the footage is referenced in the complaint and '[k]ey allegations in the complaint rest[ ] on the . . . video.'" *Palm v. Brooks*, 22 CV 9729 (VB), 2024 WL 1908388, at *2 (S.D.N.Y. May 1, 2024) (quoting *Norales v. Acevedo*, 21-549, 2022 WL 17958450, at *2 (2d Cir. Dec. 27, 2022)); *see Manzi v. Goldfine*, 23-CV-05176 (PMH), 2024 WL 2943876, at *4 (S.D.N.Y. June 10, 2024) (collecting cases). Here, Plaintiff's Complaint references the body worn camera ("BWC") footage. *See* Compl. Ex. 3 at 2 ("All of which was recorded on [Sellers'] body camera"); Compl. Ex. 2 at 2 ("There is video proof of this interaction."). Because Plaintiff relies on the BWC footage in her Complaint and it is thus integral to Plaintiff's Complaint, in addressing Defendants' Motion, the Court will consider the BWC footage: Sellers Video, Chanderdat Video 1, Roberts Video, and Chanderdat Video 2.

## DISCUSSION

The Court construes Plaintiff's claims[5] liberally as causes of action under § 1983 for violation of the First Amendment right to free speech; violation of the Fourth Amendment for false arrest and false imprisonment; violation of the Fourth Amendment for illegal search and seizure; violation of the Fourteenth Amendment due process clause[6]; conspiracy; and municipal liability under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). *See generally* Compl. Ex. 2 at 2-3. The Court addresses each in turn.

### A. Plaintiff's First Amendment Claim

Defendants move to dismiss Plaintiff's First Amendment claim on the grounds that she fails to plead that her speech was protected, that Defendants' actions were motivated by her alleged protected speech, or that Defendants' actions effectively chilled her speech. Defs.' Mem. at 6-9. Defendants additionally argue that Plaintiff fails to challenge the HRA policy as an unreasonable, unconstitutional restriction. *Id.* In response, Plaintiff argues in conclusory fashion that the HRA recording policy was unreasonable, Defendants' actions were motivated by her First Amendment rights, and the Defendants effectively chilled her First Amendment rights. Pl.'s Opp'n at 3-7.

---

[5] Plaintiff asserts five claims under the First Amendment of the United States Constitution ("First Amendment") "right to freedom of press"; violation of the Fourth Amendment of the United States Constitution ("Fourth Amendment") by conspiring and forcibly removing her purse from her hands; violation of the Fifth Amendment of the United States Constitution ("Fifth Amendment") for illegal search and seizure; Eighth Amendment of the United States Constitution ("Eighth Amendment") cruel and unusual punishment; and Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment") conspiracy to illegally detain Plaintiff. *See* Compl. Ex. 2 at 2-3.

[6] Plaintiff cannot assert an Eighth Amendment cruel and unusual punishment claim because she was not convicted or subject to punishment. *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977)). Accordingly, the Court construes Plaintiff's claim to be asserting a violation of the Fourteenth Amendment Due Process Clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . because '[p]retrial detainees have not been convicted of a crime . . . .'").

Plaintiff fails to challenge the HRA policy as an unconstitutional restriction on her First Amendment rights.  A public forum is one which has "as a principal purpose . . . the free exchange of ideas."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).  "[T]he traditional public forum, and the designated public forum—are those open to the public, either through traditional use or purposeful government designation, for all types of expressive activity."  *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010).  A limited public forum is described "as both a 'subset of the designated public forum' and a 'nonpublic forum' opened to 'certain kinds of speakers or to the discussion of certain subjects.'"  *Id.* at 54 n.8 (quoting *Hotel Emps. and Rest. Emps. Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks and Recreation*, 311 F.3d 534, 545 (2d Cir. 2002)).  By contrast, "the nonpublic forum, consists of property that is not traditionally open to the public and that the government has not opened for expressive activity by members of the public."  *Id.*  A public forum is not created "whenever members of the public are permitted to freely visit a place owned or operated by the Government."  *Greer v. Spock*, 424 U.S. 828, 836 (1976); *accord Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678-79 (1992).  Indeed, the government "has power to preserve the property under its control for the use to which it is lawfully dedicated."  *Greer*, 424 U.S. at 836 (quoting *Adderley v. Florida*, 385 U.S. 39, 47 (1966)).

Even construing the alleged facts most liberally, Plaintiff does not allege that the HRA office is anything but a nonpublic forum.  Plaintiff alleges that Defendants violated her First Amendment right "to record public officials in public spaces while they are performing the work tax dollars pay them for."  Compl. Ex. 3 at 2.  Beyond the conclusory assertion that the HRA office is a "public space," she does not allege that it is a space established for the free exchange of ideas or public discourse.  *See Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 680 ("The

decision . . . to create a public forum must instead be made 'by intentionally opening a nontraditional forum for public discourse.'" (quoting *Cornelius*, 473 U.S. at 802)).  Instead, she alleges that she was visiting the HRA office "to address her concerns" regarding her benefits. Compl. Ex. 3 at 1.  This allegation does not support an inference that the HRA office was either designated or open to expressive activity that would align with a public forum.  *Compare Wandering Dago Inc. v. New York State Off. of Gen. Servs.*, 992 F. Supp. 2d 102, 117 (N.D.N.Y. 2014) ("Common examples of limited public fora include 'state university meeting facilities opened for student groups, open school board meetings, city-leased theaters, and subway platforms opened to charitable solicitations.'" (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507 (S.D.N.Y. 2013))*, and Megan Thomas Law, PLLC v. Syracuse Regional Airport Auth.*, 819 F. Supp. 3d 126, 134 (N.D.N.Y. 2026) ("Traditional public fora, 'such as . . . sidewalks and public ways[,] "are areas that have historically been open to the public for speech activities."'" (quoting *Vitagliano v. County of Westchester*, 71 F.4th 130, 137 (2d Cir. 2023)))*, and Megan Thomas Law*, 819 F. Supp. 3d at 134 ("Designated public fora are places 'that, although not traditionally open for public assembly and debate, the government has taken affirmative steps to open for general public discourse.'" (quoting *Chinese Am. Citizens All. Greater N.Y. v. N.Y. Dep't of Educ.*, 802 F. Supp. 3d 483, 514 (S.D.N.Y. 2025))), *with Wandering Dago*, 992 F. Supp. 2d at 117 ("Examples of nonpublic fora include airport terminals, government-owned professional sports stadiums, military bases and restricted access military stores, and jailhouse grounds." (citing *Hotel Emps. and Rest. Emps.*, 311 F.3d at 546).  Furthermore, the fact that other members of the public were in the waiting room does not automatically mean the HRA office was a public forum for First Amendment purposes. *See Greer*, 424 U.S. at 836.  Instead, overall, Plaintiff's allegations indicate that the HRA Office is a nonpublic forum, where there is "greater latitude" in the restricting of

8

speech.  *See Byrne*, 623 F.3d at 54; *see, e.g.*, *Omor v. City of New York*, 13–CV–2439 (RA), 2015 WL 857587, at *5 (S.D.N.Y. Feb. 27, 2015) (treating restrictions on speech in an HRA office under the standard applied to nonpublic fora because the HRA office was "not a public forum 'that has as a principal purpose . . . the free exchange of ideas.'" (quoting *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 679-80)).

Next, Plaintiff fails to plausibly allege that Defendants' instruction to stop filming was unreasonable or targeted a particular viewpoint.  Restrictions on speech in a nonpublic forum "will be upheld so long as the restriction is reasonable and viewpoint neutral."  *Byrne*, 623 F.3d at 53 (citing *Cornelius*, 473 U.S. at 800).  "Inside a non-public forum, governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and 'are not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Washpon v. Parr*, 561 F. Supp. 2d 394, 409 (S.D.N.Y. 2008) (quoting *Cornelius*, 473 U.S. at 800).  Plaintiff began recording the HRA waiting area and employees with her cellphone inside the HRA office after her dissatisfaction with service by an HRA employee.  *See* Compl. Ex. 3 at 2.  The HRA office had a clearly posted sign instructing individuals not to record and warning them that they would be escorted out if they did so. Chanderdat Video at 01:13, 01:22.  There are no facts that support an inference that Defendants' actions were unreasonable given the purposes served by the HRA building or that the policy or Defendants' enforcement of the policy was based on the content of Plaintiff's speech.  *See Omor*, 2015 WL 857587, at *5 (determining that the plaintiff's arrest for trespassing at an HRA building was not unreasonable in light of the purposes served by the HRA building); *see United States v. Murtari*, 120 F. App'x 378, 380 (2d Cir. 2004) (affirming finding that the appellant's convictions for trespass and disorderly conduct were reasonable restrictions in light of the purposes served by

the federal building); *Wozar v. Campbell*, 763 F. Supp. 3d 179 (D. Conn. 2025) (concluding that a U.S. Postal Office order limiting the plaintiff's access to the building was reasonable because it was based on the plaintiff's disruptive videorecording in the U.S. Post Office and not the content of the plaintiff's speech). As such, Plaintiff fails to allege that Defendants' prohibition on Plaintiff's video-recording and request that she leave the building was an unreasonable restriction.

Plaintiff also fails to assert a First Amendment retaliation claim. To assert a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) the plaintiff has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by her exercise of that right; and (3) the defendant's actions effectively chilled the exercise of her First Amendment right. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Assuming *arguendo* that Plaintiff has alleged that her speech was protected, given that Plaintiff has not plausibly alleged that the HRA policy was unreasonable or targeted her viewpoint, she cannot plausibly allege a causal connection between Defendants' actions and her speech.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim is granted, and this claim is dismissed.

### B. Plaintiff's False Arrest Claim

Next, Defendants argue that Plaintiff's false arrest and false imprisonment claims "fail because there was probable cause to arrest [P]laintiff for trespassing, and probable cause is supported by [P]laintiff's own allegations as well as [P]laintiff's interactions with [D]efendants" as depicted on the BWC footage. Defs.' Mem. at 9-10. Plaintiff responds that there was no probable cause for her false arrest because "there was no evidence of a crime." Pl.'s Opp'n at 10.

Plaintiff does not plausibly state a claim for false arrest. "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine

the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)). Plaintiff fails to allege that her confinement "was not otherwise privileged" because the facts indicate that probable cause existed for Plaintiff's arrest. *See Ridgen v. County of Broome*, 3:24-CV-1325 (AJB/ML), 2025 WL 2772080, at *20-21 (N.D.N.Y. Sep. 29, 2025) (dismissing false arrest claim where the facts alleged established that the defendants had probable cause and the plaintiff thus failed to plausibly allege "any facts vitiating the defendants' probable cause to arrest").

Probable cause is a complete defense to false arrest claims, *Triolo v. Nassau County*, 24 F.4th 98, 106 (2d Cir. 2022), and false imprisonment claims, *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citing *Zanghi v. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985)). Probable cause exists when officers "have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Hernandez*, 939 F.3d at 199 (quoting *Posr v. Court Office Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999)). The Court evaluates only the facts available to the officer "at the time of the arrest and immediately before it." *Triolo*, 24 F.4th at 106 (quoting *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012)). Under New York law, there are three elements of criminal trespass: "(1) that a lawful order excluding the defendant from the premises was issued, (2) that the order was communicated to the defendant by a person with authority to make the order, and (3) that the defendant defied that order." *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (citing *People v. Munroe*, 853 N.Y.S.2d 457, 458 (N.Y. App. Term. 2007)); *see also People v. Basch*, 325 N.E.2d

11

156, 159 (N.Y. 1975); N.Y. PENAL LAW §§ 140.00, 140.05. Thus, to the extent that these elements are present on the face of Plaintiff's Complaint, Defendants' probable cause may require dismissal of Plaintiff's false arrest and false imprisonment claims. *See Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007) (explaining that false arrest and false imprisonment claims can be dismissed based on probable cause if the complaint "on its face" supports a finding that there was probable cause); *cf. Omor*, 2015 WL 857587, at *4 (explaining on summary judgment that, to establish probable cause for the plaintiff's arrest for trespass, the defendants had to show the existence of the three elements of trespass).

The facts alleged demonstrate that there was probable cause to detain Plaintiff for criminal trespass because there were sufficient facts to warrant a reasonable belief that Plaintiff was trespassing. First, there was an order excluding Plaintiff from the premises.[7] The HRA building had a policy prohibiting clients from recording, *see, e.g.*, Chanderdat Video at 01:13, 01:23, which policy Plaintiff acknowledges by challenging it in her Complaint, *see* Compl. Ex. 2 at 2 (acknowledging that Defendants are "enforcing a policy"); Compl. Ex. 4 at 1 (seeking to discontinue "the policy"). Next, Plaintiff alleges that the no-recording policy was communicated to Plaintiff by the Defendants when she took her phone out and began to record. Compl. Ex. 3 at 2 ("[Chanderdat] approached the plaintiff . . . yelling at her to stop recording and that they have a policy which says clients are not allowed to record in the building."); *see also* Chanderdat Video 1 at 00:39-1:11. The policy was also posted on the column in the waiting area, where it is plausible that Plaintiff could have seen it. *See* Chanderdat Video 1 at 01:13, 01:23. Finally, Plaintiff also

---

[7] Plaintiff argues that there was no probable cause because the no-recording policy was unlawful. Pl.'s Opp'n at 10. However, for the reasons explained *supra* Section A, Plaintiff fails to allege that the policy was an unreasonable restriction in violation of the First Amendment.

alleges facts showing that she continued to record after being told to stop, thereby defying the order. For instance, she alleges that there is "video proof" of her interaction with Defendants and of being handcuffed, indicating that the video never stopped recording. Compl. Ex. 2 at 2. Plaintiff also does not allege that she stopped recording at any point. *See generally* Compl. Ex. 2; Compl. Ex. 3. Plaintiff's defiance is corroborated by the BWC footage. *See, e.g.*, Chanderdat Video 1 at 00:39-01:11.

Thus, Plaintiff's false arrest and false imprisonment claims fail, and Defendants' motion is granted with respect to these claims.

### C. Plaintiff's Excessive Force Claim

Defendants argue that Plaintiff fails to "advance a general excessive force claim." Defs.' Mem. at 12. Plaintiff responds that she asserts an excessive force claim because Defendants had no probable cause to arrest Plaintiff. Pl.'s Opp'n at 14-15.

To the extent that Plaintiff alleges a claim for excessive use of force, it fails. "[A]pplication of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). Courts consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Importantly, "'[n]ot every push or shove' . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Plaintiff alleges that "she was shoved towards the exit while surrounded by the officers" and "shoved and pushed closer to the door." Compl. Ex. 3 at 2.

13

However, the BWC footage shows that Plaintiff was walking towards the exit with Defendants. *See* Chanderdat Video at 00:35-01:43. Seller places her hand on Plaintiff's arm and Plaintiff shoves her arm against Sellers' arm but Sellers does not push or shove Plaintiff. *Id.* Even construed liberally, Defendants' reaction was reasonable; they were reacting to Plaintiff's noncompliance with the building policy by instructing her to leave and escorting her out of the building. Thus, there is no plausible inference that the Defendants' corralling of Plaintiff towards the exit was a use of excessive force.

To the extent that Plaintiff alleges that her handcuffing resulted in excessive force, this claim similarly fails. "[E]xcessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015). Courts consider three evidentiary factors in evaluating the reasonableness of a handcuffing, including at the motion-to-dismiss stage: "(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists." *Cugini v. City of New York*, 941 F.3d 604, 612-13 (2d Cir. 2019) (alterations in original) (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)). Notably, "a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Esmont*, 371 F. Supp. 2d at 214. "Placing secure handcuffs on an uncooperative alleged trespasser to gain compliance is not unreasonable per se." *Wellington v. City of New York*, 24-cv-08743 (JLR), 2026 WL 1179529, at *8 (S.D.N.Y. Apr. 30, 2026). Here, Defendants placed handcuffs on Plaintiff after her repeated noncompliance with their requests that she step out of the building. Compl. Ex. 3 at 3; Chanderdat Video at 01:41-02:14. Plaintiff does not therefore plausibly allege that her handcuffing involved excessive force.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff alleges that at the time she was handcuffed, HRA Officer Chanderdat "forcibly removed [her] cellular phone from [her] hands [thereby] injuring and spraining [her] left wrist and shoulder."  Compl. Ex. 2 at 2.  She alleges that when she was later escorted out by the NYPD, she waited "for the ambulance to arrive," went to the hospital, and then "received treatment to her left shoulder and wrist, along with pain medication and muscle relaxers."  *Id.* at 4.  However, Plaintiff does not allege that the alleged injuries resulted from the handcuffs being too tight or that she signaled her distress to Defendants in any way.  *Contrast Livigni v. Ortega*, 15-cv-9454 (CM), 2016 WL 6143351, at *4 (S.D.N.Y. Oct. 19, 2016) (dismissing excessive force claim based on use of handcuffs because the plaintiff's allegation that he suffered a loss of circulation and that his wrists were "chronically debilitated" did "not provide any more information about the extent of his alleged injuries, nor . . . that [the defendants] ignored a request to loosen the handcuffs.")*, with Cugini*, 941 F.3d at 614-15 (reasoning that the plaintiff "communicated her distress" and "evidenced her physical discomfort" to which the defendant responded, "don't make me hurt you," so the defendant should reasonably have known that his use of force was excessive).  In other words, she does not allege anything more than "temporary discomfort," which is insufficient.  *See Zapata v. Stefanski*, 24-CV-3785 (OEM) (CHK), 2026 WL 292148, at *2 (E.D.N.Y. Feb. 4, 2026) (collecting cases); *Hollins v. City of New York*, 10 Civ. 1650(LGS), 2014 WL 836950, at *9 (S.D.N.Y. Mar. 3, 2014).

Accordingly, Defendants' motion to dismiss Plaintiff's excessive force claim is granted.

### D.  Plaintiff's Unreasonable Search and Seizure Claim

Plaintiff alleges that the Defendants unlawfully searched and seized her purse, identification, and phone.  Compl. Ex. 2 at 2; Compl. Ex. 3 at 3.  Defendants argue that Plaintiff's unreasonable search and seizure claim should be dismissed because there was probable cause to

detain her.  Defs.' Mem. at 15.  Plaintiff argues that Defendants conducted their search and seizure without probable cause.  Pl.'s Opp'n at 10, 13.

The Fourth Amendment acknowledges "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (1985)).  "The Government also conducts a search within the meaning of the Fourth Amendment when it physically intrudes or trespasses upon an individual's 'person[ ], house[ ], papers, [or] effects' for the purpose of obtaining information."  *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 467 (alterations in original) (quoting *United States v. Jones*, 565 U.S. 400, 404 (2012)).  "Under the Constitution, warrantless searches are per se unreasonable, unless they fall within one of a limited number of exceptions."  *Evans v. Solomon*, 681 F. Supp. 2d 233, 246 (E.D.N.Y. 2010) (citing *Thompson v. Louisiana*, 469 U.S. 17, 19–20 (1985)).  A search incident to a lawful arrest "constitutes an exception to the [Fourth Amendment's] warrant requirement."  *Riley v. California*, 573 U.S. 373, 382 (2014); *Arizona v. Gant*, 556 U.S. 332, 338 (2009).  Thus, "where police officers have probable cause to effect a custodial arrest, they may search the suspect without a warrant incident to that arrest."  *United States v. Herron*, 18 F. Supp. 3d 214, 223 (E.D.N.Y. 2014) (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

Here Plaintiff cannot plausibly allege that Defendants' search was unreasonable.  As explained *supra* Section B, Plaintiff fails to allege a false arrest claim because the facts alleged show that there was probable cause to detain Plaintiff for trespassing.  Therefore, Defendants were permitted to take her phone and search her purse incident to her detention.  *See Henton v. City of*

16

*New York*, 24-CV-2270 (AMD) (LKE), 2025 WL 1907004, at *5 (E.D.N.Y. July 10, 2025) (dismissing the plaintiff's unreasonable search and seizure claim where the facts indicated that there was probable cause to arrest the plaintiff for trespassing).

Accordingly, Defendants' motion to dismiss Plaintiff's search and seizure claim is granted.

### E. Plaintiff's Due Process Claim

Defendants argue that, to the extent that Court construes Plaintiff's Eighth Amendment claim as a claim under the Fourteenth Amendment's Due Process Clause, Plaintiff fails to state a claim. Defs.' Mem. at 18. Plaintiff responds that Defendants' excessive force and rough handling of her "is a cruel and unusual punishment for recording in public." Opp'n at 15. She further responds that Defendants violated her due process rights because "there was no evidence of a crime." *Id.* at 12.

A pretrial detainee may allege "unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The detainee must satisfy two prongs: (1) "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process" and (2) "that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* As to the first prong, the pretrial detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013)). As to the second prong, the pretrial detainee must show "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Plaintiff does not plausibly allege a deliberate indifference claim. On the first prong, she does not allege any facts that the conditions of her detention posed an unreasonable risk of serious damage to her health. *See generally* Compl.; Compl. Ex. 2; Compl. Ex. 3. And on the second prong, Plaintiff similarly does not allege any facts that Defendants intentionally imposed any alleged condition or recklessly failed to act with reasonable care to mitigate risk that the alleged condition posed. *See generally* Compl.; Compl. Ex. 2; Compl. Ex. 3.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff argues that Defendants used "excessive force and rough handling" when she was handcuffed, which "is a cruel and unusual punishment for recording in public," Pl.'s Opp'n at 15, but as explained *supra* Section C, she does not plausibly allege the use of excessive force. Nonetheless, this cursory allegation fails to satisfy either prong set forth under *Darnell*.

Accordingly, Defendants' motion to dismiss Plaintiff's due process claim is granted

### F.  Plaintiff's Fabricated Evidence Claim

While Plaintiff does not raise a fabricated-evidence claim in her Complaint, in opposition to Defendants' Motion, Plaintiff asserts that Defendants fabricated evidence. *See* Pl.'s Opp'n at 11-12, 18-19. "Where a plaintiff is proceeding *pro se*, factual assertion in the plaintiff's opposition to a motion to dismiss may be considered and treated as an amendment to the complaint." *Holmes v. Fresh Direct*, 13-CV-4657 (NGG)(CLP), 2015 WL 4885216, at *3 (E.D.N.Y. Aug. 5, 2015) (citing *Rosales v. Kikendall,* 605 F. App'x 12, 15 (2d Cir. 2015)). To the extent that Plaintiff seeks to amend her Complaint to add a claim for fabricated evidence based on the assertions in her Opposition, the Court considers whether it is plausibly alleged.

"To succeed on a fabricated evidence claim, a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict,

18

(4) forward[ed] that information to prosecutors, and (5) the plaintiff suffe[red] a deprivation of life, liberty, or property as a result.'" *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (alterations in original) (quoting *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021).

Plaintiff does not plausibly allege a fabricated evidence claim.  Plaintiff argues that Chanderdat fabricated evidence by saying that Plaintiff "was harassing the [HRA] worker and holding the camera in the worker['s] face," while the BWC footage shows that Plaintiff did not get "anywhere near" the HRA employee, "nor does it show [Plaintiff] harassing anyone."  Pl.'s Opp'n at 18.  Plaintiff also argues that Roberts attempted to fabricate information by trying to convince an individual in the waiting room to make a statement that Plaintiff tried to fight the client.  *See* Pl's. Opp'n at 11, 18-19.  However, Plaintiff does not, and cannot, allege that any of this information was forwarded to prosectors nor that a prosecution was commenced based on the allegedly fabricated evidence because she was never charged.  *Cf. McDonough v. Smith*, 588 U.S. 109, 116-17 (2019) (analogizing fabricated evidence claims to malicious prosecution claims, both of which cannot be brought prior to "favorable termination of [] prosecution").

Accordingly, to the extent that Plaintiff asserts a fabricated-evidence claim, such claim fails, and it is dismissed.

### G. Plaintiff's Conspiracy Claim

Defendants argue that Plaintiff fails to allege a conspiracy to violate civil rights pursuant to § 1983 and 42 U.S.C. § 1986 because the allegations do not support a finding that any of Plaintiff's constitutional rights were violated.  Defs.' Mem. at 19.  Plaintiff argues that she plausibly alleges a conspiracy because the type of misconduct she alleged included "intentional false arrests" and "the intentional fabrication of evidence."  Pl.'s Opp'n at 16.

Plaintiff fails to state a conspiracy claim. A § 1983 conspiracy claim "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). A plaintiff must sufficiently allege "that a defendant 'acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights.'" *Morpurgo v. Inc. Village of Sag Harbor*, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010) (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). For the reasons set forth *supra* Sections A, B, C, D, E, and F, Plaintiff has failed to allege a violation of her constitutional rights, including claims for false arrest and fabrication of evidence; she therefore cannot state a claim for conspiracy. *See Marquez v. Hoffman*, 18-CV-7315 (ALC), 2021 WL 1226981, at *23 (S.D.N.Y Mar. 31, 2021) ("Where Plaintiff has failed to plead a claim for a violation of her constitutional rights, her conspiracy claim fails as well." (citing *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018)).

Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claims is granted.

## H. Plaintiff's Municipal Liability Claim

Defendants argue that Plaintiff is unable to assert a claim for liability against the City because she does not plausibly allege liability under *Monell*, 436 U.S. 658. Defs.' Mem. at 24-25. Plaintiff does not directly respond to this allegation in her opposition. *See generally* Pl.'s Opp'n.

Plaintiff does not plausibly state a claim for municipal liability. A municipality may be held liable under § 1983 for its employees' unconstitutional actions only where "execution of a government's policy or custom" causes a constitutional violation. *Monell*, 436 U.S. at 694. To establish liability under *Monell*, a plaintiff "must allege facts demonstrating (1) the existence of an officially-adopted 'policy, custom, or practice' and (2) a direct and deliberate causal connection

20

between that 'policy, custom, or practice' and the violation of plaintiff's federally-protected rights." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997)). Because Plaintiff does not plausibly allege a violation of her constitutional rights she fails to state a claim for municipal liability under *Monell*. *See Segal v. City of New York*, 459 F.3d 207, 219-20 (2d Cir. 2006). Even if Plaintiff did allege underlying constitutional violations, she fails to allege a policy or practice so widespread as to impose municipal liability. *See Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) (explaining that a "[p]laintiff must allege 'that the relevant practice is so widespread as to have the force of law'" (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997))).

Moreover, Plaintiff's failure to address Defendants' argument that she does not plausibly allege municipal liability in her Opposition may be considered an abandonment of that claim, further warranting dismissal. *See Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (explaining that if a party fails to defend relevant claims in their opposition, a court may infer that the claims are abandoned).

Accordingly, Defendants' motion to dismiss Plaintiff's municipal liability claim is granted.

**CONCLUSION**

For the foregoing reasons, Defendants' motion is granted, and Plaintiff's Complaint is dismissed.[8]

SO ORDERED.

_____/s/_____

ORELIA E. MERCHANT
United States District Judge

June 26, 2026
Brooklyn, New York

---

[8] The Court does not reach Defendants' arguments regarding qualified immunity given its conclusions.

22